STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JOYCE
BALTHROP, DEFENDANT-RESPONDENT.

Argued September 28, 1982—Decided March 31, 1983.

*Marc J. Friedman,* Assistant Prosecutor, argued the cause for appellant (*George L. Schneider,* Essex County Prosecutor, attorney).

*Herbert I. Waldman,* Designated Counsel, argued the cause for respondent (*Joseph H. Rodriguez,* Public Defender, attorney).

PER CURIAM.

Tried to a jury, defendant was convicted, as an accomplice, of assault with intent to rob in violation of *N.J.S.A.* 2A:90–2, and of aiding and assisting in the escape of the perpetrators, contrary to *N.J.S.A.* 2A:85–2(a). The trial presented a sharply disputed fact issue as to whether defendant was the driver of the getaway car. She was identified by three prosecution witnesses, two of whom had records of prior convictions for narcotics violations. The trial court, applying *State v. Sands,* 76 *N.J.* 127 (1978), refused to allow defendant to impeach the credibility of those two witnesses through the use of their criminal convictions. A divided panel of the Appellate Division reversed and remanded for a new trial, 179 *N.J.Super.* 14 (1981), with each judge writing separately. The State's appeal is here as of right because of the dissent below. *R.* 2:2–1(a)(2).

I

The essential facts are adequately stated in Judge Polow's opinion in the court below as follows:

> Three prosecution witnesses, Gloria Larkin, Charles Sutton and Weldon Grady, identified defendant as the driver of the purported getaway vehicle, a gold or yellow Volkswagen, based upon observations from apartment windows at about four o'clock in the morning. On cross-examination Larkin conceded that she was unable to carefully observe the driver of the vehicle but positively identified the car as the vehicle she had seen defendant driving earlier in the day. Grady identified the scarf worn by the driver as similar to the one defendant had worn earlier in the evening. Sutton modified his direct testimony identifying defendant as the driver by his statement on cross-examination that he did not see defendant driving the vehicle although the driver was a young woman. Defendant denied her presence in the vehicle at the time of the offense and produced three corroborative witnesses. The testimony of each, including her mother and

brother, lent varying degrees of support to defendant's claim that she was home in bed when the crime was committed.

Upon the State's application the court excluded the use of prior convictions to attack the credibility of Larkin and Sutton. The trial judge, concluding that *State v. Sands,* 76 *N.J.* 127 (1978), vested him with such discretionary authority, ruled that the respective five- and eight-year-old narcotics convictions were too remote and thus inadmissible. Defendant disagreed and argued that the discretion authorized by *Sands* applies only to a defendant as a witness in a criminal trial and that in any event the trial judge erred in declaring the convictions too remote. She contends that had she been allowed to elicit testimony regarding the two witnesses' prior convictions, their "credibility—weak as it was—would have been destroyed in the minds of the jurors." Since the only evidence of her involvement was contained in the testimony of the three prosecution witnesses who identified her as the driver, and since Grady admitted on cross-examination that he "lied" to police in reporting that he had seen nothing, we conclude that if the excluded testimony had been introduced, the jury may have arrived at a result it otherwise might not have reached. [179 *N.J.Super.* at 17–18.]

It was on this basis that the Appellate Division, satisfied that the prior criminal convictions of Larkin and Sutton should not have been excluded, reversed and remanded for a new trial. We affirm, substantially on the basis of Judge Polow's opinion stating the majority position below, with but slight differences as touched upon here.

II

*N.J.S.A.* 2A:81–12 provides that "[f]or the purpose of affecting the credibility of any witness, * * * his conviction of any crime may be shown by examination or otherwise * * *." Under *Evid.R.* 4, evidence may be excluded if "its probative value is substantially outweighed by the risk that its admission will either (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury." Combining the force of these provisions with language from *State v. Sands,* 76 *N.J.* at 144 (" * * * whether a prior conviction may be admitted into evidence against a criminal defendant rests within the sound discretion of the trial judge"), the Appellate Division held that evidence of prior convictions to affect the credibility of any witness can be excluded only when the probative value of the

conviction "is outweighed by a substantial danger of prejudice, undue consumption of time or confusion." 179 *N.J.Super.* at 19.

As Judge Polow observed, *Sands* instructed that " '[o]rdinarily evidence of prior convictions *should be admitted* and the burden of proof to justify exclusion rests on the [party seeking exclusion].' *Id.* [76 *N.J.*] at 144 (emphasis supplied)." 179 *N.J.Super.* at 20. He made the point that in balancing the probative value of a conviction against the prejudice to the party seeking to exclude the conviction, the prejudice considered could differ according to the party involved. It was on this point that the judges below appear to have divided.

The focus of that disagreement is sharpened by reference to Judge Joelson's opinion, wherein he too emphasized that the degree of prejudice resulting from the admission of evidence of a prior conviction can vary. He departed from Judge Polow's analysis, however, which discussed prejudice to the *witness* rather than to the *party* who calls that witness. Judge Joelson took the latter—and we think correct—approach, stating that "the prejudice to the State by reason of admission of evidence of a prior criminal conviction of a State's witness pales into insignificance when contrasted with the prejudice to a defendant himself by reason of admission of evidence of his prior criminal conviction." 179 *N.J.Super.* at 22–23. The point is that the suggestion of criminal propensity could put a defendant in prison, a risk not faced by a witness. Judge Joelson would apply the same balancing test to determine admissibility of prior convictions regardless of one's status as defendant or witness, recognizing however that greater *prejudice* could result to a defendant than to a witness from proof of the *same* crime *equally* remote from the trial.

In dissent, Judge Fritz perceived his colleagues as having created for defendants a standard different from that used for other witnesses and insisted that the *Evid.R.* 4 weighing of probative value against prejudice should be done "under a legal blindfold respecting whether *the person testifying* is party or

nonparty." 179 *N.J.Super.* at 24 (emphasis in original). We think this criticism of the majority below springs from a misreading of the other two opinions. Whether the "blindfold" analogy be apt or no, the majority of the Appellate Division correctly suggested only that inasmuch as the potential prejudice to the criminal defendant is fraught with more serious consequences than those confronting a prosecution witness, what amounts to "undue prejudice" to the former might not to the latter. The standard, derived from *Evid.R.* 4, remains the same for all witnesses; but in applying that standard, the balance will necessarily be affected by whose credibility it is that is sought to be impeached by use of the prior conviction.

### III

Turning to the *Evid.R.* 4 balancing of the probative value of the State's witnesses' convictions against any substantial danger of prejudice, undue consumption of time, or confusion (no one suggests any concern in respect of the latter two elements), both judges voting with the majority below stressed that neither *Evid.R.* 4 nor *Sands* permits a trial court to exercise its discretion by excluding otherwise admissible evidence unless the danger of undue prejudice is "substantial." 79 *N.J.Super.* at 19; *id.* at 22. They held that the State had failed to sustain its burden of establishing prejudice and that the trial court, despite its obvious grasp of the applicable principles set forth in *Sands,* nevertheless failed to make any specific findings justifying exclusion of the proffered evidence. We need hardly add that a trial court's ruling on any *Evid.R.* 4 issue should include some elaboration on the substantial danger of undue prejudice, or the absence thereof, that would accrue to the objecting party if the proferred evidence were introduced. Our appraisal of the record in this case satisfies us that the State would not have suffered undue prejudice sufficient to outweigh the probative value of the prior convictions, and that under the circumstances the trial court mistakenly exercised its discretion in excluding the evidence thereof.

Nor can we say that the error was harmless. As it was, the case was a close one, the jury taking two days to deliberate on its verdict. The credibility of Sutton and Larkin, whose prior convictions were sought to be used for impeachment purposes, had already been undermined. The excluded information might well have swayed the jurors in their appraisal of the credibility of these two crucial witnesses.

## IV

Although our disposition of the case renders unnecessary any extended discussion of defendant's argument that her right of confrontation requires admission of all prior convictions of prosecution witnesses, see *U.S. Const.* Amend. VI, we would simply add, almost as a footnote to this opinion, that *Davis v. Alaska,* 415 *U.S.* 308, 94 *S.Ct.* 1105, 39 *L.Ed.*2d 347 (1974), upon which defendant relies, does not support her position. *Davis* involved the use of a prior conviction to establish bias rather than to impeach general credibility. Since the showing of bias was central to the case, the Supreme Court held that the defendant's rights were violated because he was not permitted to reveal the prior convictions on cross-examination. As stated by Justice Stewart in his concurrence, "the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his [prior] convictions." *Id.* at 321, 94 *S.Ct.* at 1112.

Affirmed.

SCHREIBER, J., dissenting.

In *State v. Sands,* 76 *N.J.* 127 (1978), we held that *N.J.S.A.* 2A:81–12 did not set down a wooden rule that the conviction of a crime may always be introduced into evidence to affect the credibility of any witness. Rather, the applicability of the statute in any given case depended on the nature of the crime for which the witness had been convicted, its remoteness and the

danger of prejudice, delay or confusion. In *Sands* we also noted that, because of the statute, ordinarily evidence of prior convictions should be admitted and placed the burden of justifying exclusion on the party seeking preclusion. We observed that whether the evidence should be admitted rested within the sound discretion of the trial judge, who should utilize the standards of *Evid.R.* 4: is the probative value "substantially outweighed by the risk that its admission will either (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury"?

The prior convictions in *Sands* implicated the defendant and our discussion centered upon that particular circumstance. However, there is no reason why the *Sands'* principle is not equally applicable to prior convictions of·witnesses other than the defendant. *State v. Harkins,* 177 *N.J.Super.* 397 (App.Div. 1981). *N.J.S.A.* 2A:81–12 contains no limitation. The statute by its terms refers to convictions affecting the credibility of "*any* witness...." (emphasis supplied).

One significant different factor comes into play in applying the *Sands'* standard when the defendant is the witness. That is the tendency of the jury to believe that, because of the conviction, the defendant has a criminal disposition. Though that element is not present when the State's witness is being challenged, the possible prejudice to the State's case should be assessed by the trial court when exercising its judgment. The prejudice to the State, though not so readily manifest as in the case of a defendant, is no less real.

In making these evaluations, the trial court has been entrusted with a wide latitude of judgment. 76 *N.J.* at 144. Moreover, on appeal, the trial court's conclusion will not be upset unless there has been an abuse of that discretion. There must be a clear error of judgment. In other words, a reversing appellate court must find that the trial "court's ruling [has strayed] far enough from the mark to become reversible error." *Hager v. Weber,* 7 *N.J.* 201, 214 (1951) (Case, J. concurring).

"Discretion" means when it is said that something is to be done within the discretion of the authorities and that that something is to be done according to the rules of reason and justice, not according to private opinion; according to law, and not humour. It is to be, not arbitrary, vague, and fanciful, but legal and regular. And it must be exercised within the limit, to which an honest man competent to the discharge of his office ought to confine himself. [Lord Halsbury, L.C., *Sharp v. Wakefield* [1891] A.C. 173, 179]

The trial court in this case applied the controlling law. See excerpt from the trial court's opinion quoted at length in Judge Fritz's dissent in the Appellate Division below, 179 *N.J.Super.* 14, 26 (1981). The trial court excluded an eight-year-old conviction for possession of narcotics of one witness, who had no subsequent convictions, and a five-year-old conviction for the same offense of the second witness, who had a subsequent minor violation of probation. Neither conviction directly implicated the witnesses' veracity. Introduction of the convictions could have had a prejudicial impact on the State's case. A judge could reasonably conclude that the jury might improperly infer lack of credibility from infractions unrelated to veracity and honesty or might give inappropriate weight to these crimes committed so many years before the proceedings at issue. Under these circumstances, I am not satisfied that the trial court's determination was so wide of the mark that appellate intervention was justified.

I would reverse.

Justice POLLOCK joins in this opinion.

*For affirmance* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER and O'HERN—4.

*For reversal* —Justices SCHREIBER and POLLOCK—2.