290 N.J. Super. 280 (1996)
675 A.2d 698
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HRATCH ZADOYAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 1, 1996.
Decided May 16, 1996.
*281 Before D'ANNUNZIO, CONLEY and BRAITHWAITE, JJ.
Galantucci & Patuto, attorneys for appellant (Philip De Vencents, on the brief).
Deborah T. Poritz, Attorney General, attorney for respondent (Teresa A. Blair, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Tried to a jury under Bergen County Indictment S-857-94-01, defendant was convicted of second degree robbery, in violation of N.J.S.A. 2C:15-1; carjacking, in violation of N.J.S.A. 2C:15-2; and criminal restraint, as a lesser included offense of kidnapping, in violation of N.J.S.A. 2C:13-2a. The court sentenced defendant *282 to twenty-five years imprisonment with a twelve and one-half year period of parole ineligibility for the carjacking. The court also sentenced defendant to ten years imprisonment with five years of parole ineligibility for the second degree robbery and to five years imprisonment with a two and one-half year period of parole ineligibility for the criminal restraint. All sentences were imposed to be served concurrently.
On April 16, 1994, Daniel McLaughlin, the assistant manager of a drugstore in Teaneck, saw defendant put items in a bag and then leave without paying. The store's security alarm sounded, and McLaughlin tried to get defendant to return to the store in order to check the bag.
Defendant instead walked away briskly, and McLaughlin followed him to the intersection of Penn Avenue and River Road. Defendant stopped a car and tried to get in it, but the passenger pushed him away. He went to the next car, operated by Alison Bond, and got in on the passenger side.
Shortly thereafter the car stopped at a red light, and McLaughlin approached it. He told Bond that he was following defendant "in relation to a possible shoplifting and that she may not want to be in the vehicle with him." Bond immediately put the transmission in park and tried to get out, but defendant "reached across and grabbed her by her right arm and what I thought was a purse strap and physically pulled her back and h[e]ld her in the car while he ... put his foot on the accelerator and put the gear shift into drive." McLaughlin ran to a nearby gas station and called the police.
Ralph Ronne, who lived near the intersection of Penn Road and River Road in Teaneck, saw part of the incident. He heard McLaughlin say, "Well, come back to the store. You just robbed the store." By the time Ronne got outside to his porch, defendant was standing in the middle of River Road stopping traffic. Defendant stopped a car and three men jumped out. McLaughlin said, "He robbed my store. Grab him." Defendant then got into another car with a woman driver, about a block from Ronne's *283 house. The manager went to the driver's door and knocked on her window. Ronne heard the manager ask defendant to get out of the car, but when the men from the first car approached, Ronne supposed that defendant "got nervous and he jammed on the woman's gas pedal and went through the light." The driver was trying to get out, but her seat belt impeded her and defendant "grabbed her by the shoulder and pulled her back in." Ronne did not see defendant step on the accelerator, but he "knew" the driver was not operating it. Ronne added that the driver "was dumbfounded, she didn't know what was going on."
Bond testified that at the time of the incident she was going to Riverside Square, a mall on Route 4 in Hackensack. She was on Penn Avenue, approaching the intersection with River Road, when she saw a man with a bag trying to stop cars. The vehicle ahead of her did not stop for him, so she stopped "to find out what the problem was." There were two women on the sidewalk near him, and Bond thought they were related and that there was a medical emergency, "a man who wants to take his wife to the hospital to have a baby or something of that order." The man got in her car and said he needed a ride to Route 4. Bond apparently turned onto River Road at this point.
Bond thought the man was very agitated. She asked him what was the matter, and he said he had been in a fight with his sister's boyfriend and needed to get to Route 4. She realized then that there was no medical emergency. She testified that she thought "well, I'll have to take him to Route 4, you know, and just hope that's all I have to do." She felt that she did not really have a choice.
Bond drove one block and stopped for a red light. At that point, McLaughlin ran up to her car and knocked on her window. Bond opened the door after he identified himself. McLaughlin said to her, "[a]re you aware you have a shoplifter in your car?" Bond put the car in park and tried to get out but her seat belt was still fastened. She testified that it was more the seat belt than defendant that prevented her from leaving the car. Defendant *284 put the transmission back in drive, put his foot on the accelerator, and said "[l]et's go." Bond added that "he may have pulled my arm" as well.
They crossed the intersection and proceeded along River Road for about five blocks until Bond asked defendant to take his foot off the accelerator, and he complied. Two blocks later they approached a red light, and the man told her to "run it." She did so because she felt she had no choice. She "was feeling very frightened and annoyed at myself for stopping in the first place because I felt like I had gotten into something that I couldn't control." She "wasn't afraid of being killed," but rather "was just afraid of the whole situation of being in the car and speeding along and just not knowing what was going to happen."
When they turned onto Route 4, the man was still very agitated. "He kept saying he didn't want to go to jail, he didn't want to go to jail, and he didn't want to hurt me, but he didn't want to go to jail." The Route 4 traffic was stopped because of heavy volume. Bond asked defendant, "[w]hy don't you get out," and he did. He had not threatened her, he did not have a weapon, and Bond understood that all he wanted was to get away from the other man who had called him a shoplifter. At some point he said he "was scared about what [Bond] might say," which she took to mean her telling the police "where he was going so they could catch him."
Bond turned the car around and went back to a gas station at the corner of River Road and Cedar Lane, where she saw a police car and spoke to the officers. Two hours later she went to the police station to give a statement. In it she said she was in fear for her life, because she "felt very, very scared initially." She did not mention the man's grabbing her arm. At trial she explained that omission by saying that it "was not the primary thing," and specified that "I'm not saying now that he was forcing me in that he pulled me," only that "I know that he had at some point touched my arm."
Officer Thomas Sikorsky, who took defendant's statement, read it to the jury as follows:

*285 Question: "What can you tell us about this incident?"
Answer: "I was in the CVS store on Cedar Lane. I took about 17 boxes of Bayer aspirin, Advil, and Anacin.... I put them in a plastic bag.... Then when I left the store, I walked up Cedar Lane and made a right on Elm Avenue. I went through some apartment buildings, through an alleyway, and back onto Larch Avenue, and then I ran down Penn Avenue because I had the stolen shit on me and I wanted to get out of the area. Actually, I didn't start running until I saw the store worker from CVS following me and then I started to run.
"When I got to River Road, I tried to flag down some cars. A lady stopped, rolled down her window, and I said, `Excuse me, ma'am, can I get a ride to Route 4?'
"She said, `Okay,' and then she opened the door and let me get into her car.
"When we got to the red light at River Road and Cedar Lane, the manager walked up to the car and said, `Are you aware that you picked up a shoplifter?'
"I'm not sure how the lady answered the manager. The light turned green and I said, `Go.' The lady had her foot on the brake and I took my left foot and pressed down on the accelerator and said, `Go.' So I had my foot down on the accelerator with so much velocity that she had to let go of the brakes because the brakes wouldn't hold. I told her, `Take me to Route 4. I don't want to go to jail.'
"She said, `I'm going to take you there and get out of the car.'
"Not once did I threaten her and not once did I hurt her."
Question: "What happened next?"
Answer: "She gave me a ride to Route 4 between Riverside Square and the Bergen Mall. It was by Hoffman-Koos [sic], and I got out near there."
Question: "At any time did you force this lady to drive through a red light?"
Answer: "Not that I remember."
Defendant did not testify.
The theft of the over-the-counter drugs from the pharmacy was the predicate for the robbery conviction.
On appeal, defendant makes the following contentions:
POINT I
THE SENTENCE AUTHORIZED BY THE LEGISLATURE FOR VIOLATION OF N.J.S.A. 2c:15-2a.(4) CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT, AND ON ITS FACE, AND AS APPLIED, VIOLATES DEFENDANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGRAPHS 1 AND 12 OF THE NEW JERSEY CONSTITUTION. [Not Raised Below].
POINT II
THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON THE CHARGE OF CARJACKING.
POINT III

*286 THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING ADEQUATELY TO INSTRUCT THE JURY ON ESSENTIAL ELEMENTS OF ROBBERY, I.E., "IMMEDIATE FLIGHT" AND "FORCE," DESPITE NUMEROUS JURY REQUESTS FOR RE-INSTRUCTION, AND IN FAILING TO RELATE THESE ELEMENTS TO THE PARTICULAR FACTS OF THIS CASE. [Not Raised Below].
POINT IV
DEFENDANT'S CONVICTION SHOULD BE REVERSED BECAUSE OF PROSECUTORIAL MISCONDUCT IN MAKING A "SAFE STREETS" ARGUMENT TO THE JURY IN SUMMATION. [Not Raised Below].
POINT V
THE SENTENCE IMPOSED IN THIS CASE WAS MANIFESTLY EXCESSIVE, WAS IMPOSED IN VIOLATION OF APPLICABLE SENTENCING STANDARDS AND SHOCKS THE CONSCIENCE.
We have carefully reviewed the record and, in light of applicable law, we conclude that Points I, III and IV are clearly without merit. R. 2:11-3(e)(2). As to Point I, see Gregg v. Georgia, 428 U.S. 153, 175-76, 96 S.Ct. 2909, 2926, 49 L.Ed.2d 859, 876 (1976); State v. Hampton, 61 N.J. 250, 273-74, 294 A.2d 23 (1972); see also State v. Maldonado, 137 N.J. 536, 556-57, 645 A.2d 1165 (1994). We recently rejected the same contention in State v. Williams, 289 N.J. Super. 611, 674 A.2d 643 (App.Div. 1996).
We address Points II and V. The carjacking statute provides:
a. Carjacking defined. A person is guilty of carjacking if in the course of committing an unlawful taking of a motor vehicle, as defined in N.J.S. 39:1-1, or in an attempt to commit an unlawful taking of a motor vehicle he:
(1) inflicts bodily injury or uses force upon an occupant or person in possession or control of a motor vehicle;
(2) threatens an occupant or person in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediate bodily injury;
(3) commits or threatens immediately to commit any crime of the first or second degree; or
(4) operates or causes said vehicle to be operated with the person who was in possession or control or was an occupant of the motor vehicle at the time of the taking remaining in the vehicle.
An act shall be deemed to be "in the course of committing an unlawful taking of a motor vehicle" if it occurs during an attempt to commit the unlawful taking of a motor vehicle or during an immediate flight after the attempt or commission.
b. Grading. Carjacking is a crime of the first degree and upon conviction thereof a person may, notwithstanding the provisions of paragraph (1) of subsection a. of *287 N.J.S. 2C:43-6, be sentenced to an ordinary term of imprisonment between 10 and 30 years. A person convicted of carjacking shall be sentenced to a term of imprisonment and that term of imprisonment shall include the imposition of a minimum term of at least five years during which the defendant shall be ineligible for parole.
[N.J.S.A. 2C:15-2].
The case was submitted to the jury under section a(4), consistent with the offense charged in the indictment. In its instructions to the jury, the trial court defined an "unlawful taking" as follows:
An unlawful taking of a motor vehicle is defined as follows: It includes the taking, operating, or exercising of control over a motor vehicle without the consent of the owner or other person authorized to give consent with the purpose of either permanently depriving the owner of the motor vehicle or temporarily withholding the motor vehicle from the owner or other person in control of the motor vehicle. The term motor vehicle includes all vehicles propelled otherwise than by muscular power excepting such vehicles as run only upon rails or tracks and does not include motorized bicycles.
This instruction is consistent with the statutory definition of "unlawful taking." N.J.S.A. 2C:1-14o and N.J.S.A. 2C:20-10. Defendant contends that the court should have granted his motion for judgment of acquittal because "there was absent from the State's proofs evidence of a critical element of `carjacking' without which the crime is not established, namely a `purpose to withhold,' however `temporarily,' the vehicle `from the owner ...' N.J.S.A. 2C:20-10b."
We disagree. The standard for ruling on a motion for acquittal is:
whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
[State v. Reyes, 50 N.J. 454, 459, 236 A.2d 385 (1967).]
See also State v. Johnson, 274 N.J. Super. 137, 156, 643 A.2d 631 (App.Div.), certif. denied, 138 N.J. 265, 649 A.2d 1285 (1994); State v. Tarver, 272 N.J. Super. 414, 424-25, 640 A.2d 314 (App.Div. 1994); State v. Ball, 268 N.J. Super. 72, 121, 632 A.2d 1222 (App.Div. 1993), aff'd, 141 N.J. 142, 661 A.2d 251 (1995), cert. denied, ___ U.S. ___, 116 S.Ct. 779, 133 L.Ed.2d 731 (1996). Applying this standard, we conclude that the evidence supported a *288 determination beyond a reasonable doubt that defendant exercised control of the Bond vehicle with a purpose to temporarily withhold it. See State v. Alexander, 215 N.J. Super. 522, 531, 522 A.2d 464 (App.Div. 1987).
We conclude, however, that the case must be remanded for resentencing on the carjacking charge.
The role of an appellate court in reviewing a sentence is limited. State v. Gardner, 113 N.J. 510, 551 A.2d 981 (1989) defined those limits. There the Court stated:
We begin with the by-now-familiar admonitions that in reviewing a sentence, an appellate court should not substitute its judgment for that of the lower court, and that a sentence imposed by a trial court is not to be upset on appeal unless it represents an abuse of the lower court's discretion. E.g., State v. Roth, 95 N.J. 334, 362-65, 471 A.2d 370 (1984), and the authorities cited therein. In Roth, we summarized as follows the criteria to be used on appeal to determine whether the sentencing court abused its discretion: an appellate court should
(a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors found below to determine whether those factors were based upon competent credible evidence in the record; and (c) determine whether even though the court sentenced in accordance with the guidelines, nevertheless application of those guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience. [Id. at 364-65, 471 A.2d 370.]
We cautioned further that "[w]hat we seek by our review is not a difference in judgment, but only a judgment that reasonable people may not reasonably make on the basis of the evidence presented," and that "[w]hen conscientious trial judges exercise discretion in accordance with the principles set forth in the Code and [relevant case law], they need fear no second-guessing." Id. at 365, 471 A.2d 370; cf. State v. Dunbar, 108 N.J. 80, 83, 527 A.2d 1346 (1987) (a sentence within the statutory guidelines "may strike us as a harsh sentence, but that is a consequence of the legislative scheme and not a clear error of judgment by the trial court.").
[Id. at 516, 551 A.2d 981.]
In the present case the sentencing judge found four aggravating factors. He stated:
On the aggravating side there are four aggravating factors. There's clear risk that you will, I guarantee it, you will commit further offenses. That's not permission to do it. I know it in my heart and everyone in this room who has any sense of this case knows it. The nature and extent of your prior criminal history led inexorably to the point where you committed this offense. That is an aggravating factor. There is a special need to deter, not an ordinary deterrence, but special deterrence. The persistent and repetitive and almost commonplace *289 taking of other people's property inevitably led to this type of an offense and it is special deterrence that must be employed here, not State versus Jarbeth deterrence. And the last aggravating factor is that a fine or other punishment besides incarceration would be merely viewed as a contingent business liability, a cost of doing business, and that's not what this is about.
You are a clear and present danger to every person on the street at any time, at any place, and I will sentence you as follows:
Our only observation regarding these findings is that aggravating factor N.J.S.A. 2C:44-1a(11), the imposition of a fine or other monetary penalty as a cost of doing business, would appear to have little significance in this case. Like deterrence, it can be found applicable to any convicted defendant whom the court has resolved to incarcerate. See State v. Gardner, supra, 113 N.J. at 520, 551 A.2d 981 ("`There would be no case in which a trial judge could not by the mere assertion of the need for general deterrence imprison an individual....'") (quoting State v. Gardner, 215 N.J. Super. 84, 97, 521 A.2d 357 (App.Div. 1987) (dissenting opinion)). The other aggravating factors are supported in the record.
The court determined that there are no mitigating factors. We are persuaded that the evidence supports the existence of mitigating factor (2), that "defendant did not contemplate that his conduct would cause or threaten serious harm." N.J.S.A. 2C:44-1b(2).[1]
We have no quarrel, otherwise, with the trial court's determination regarding the aggravating and mitigating factors. We focus our concern on the range of sentence available for a carjacking when considered in relation to the various elements which escalate the unlawful taking of a vehicle to a carjacking.
The minimum mandatory sentence is ten years imprisonment with five years of parole ineligibility. The court may sentence a defendant beyond the minimum to a maximum term of thirty *290 years with exposure to a maximum period of parole ineligibility of fifteen years. N.J.S.A. 2C:43-6b. Although carjacking is characterized as a first degree crime, the range of sentencing discretion is much wider for a carjacking. The ordinary term for a first degree crime is between ten and twenty years, with a presumptive term of fifteen years. N.J.S.A. 2C:43-6a(1); N.J.S.A. 2C:44-1f(1)(b).
There is no presumptive term for carjacking beyond the mandatory minimum of ten years imprisonment with five years of parole ineligibility. Thus, in that regard, the Legislature treated carjacking differently than it treated aggravated manslaughter and first degree kidnapping. As to those first degree crimes, the Legislature authorized an ordinary term of imprisonment between ten and thirty years for aggravated manslaughter, N.J.S.A. 2C:11-4c, and between fifteen and thirty years for kidnapping of a person sixteen years of age or older. N.J.S.A. 2C:13-1c(1). Regarding those crimes, the Legislature established presumptive terms of twenty years "unless the preponderance of aggravating or mitigating factors ... weighs in favor of a higher or lower term." N.J.S.A. 2C:44-1f(1)(a).
Rational sentencing is one of the objectives of the New Jersey Code of Criminal Justice, State v. Roth, 95 N.J. 334, 351, 471 A.2d 370 (1984), as is uniformity and the avoidance of sentencing disparity. State v. Towey, 114 N.J. 69, 78-79, 552 A.2d 994 (1989); State v. Hodge, 95 N.J. 369, 379, 471 A.2d 389 (1984). To achieve those objectives the Code's sentencing philosophy is "offense-oriented." State v. Hodge, supra, 95 N.J. at 375, 471 A.2d 389 (1984). Thus, punishment under the Code must "fit the crime, not the criminal," and the Code achieves this goal, in part, by precise grading of offenses. Id. at 375-76, 471 A.2d 389. "It is ... paramount that the sentence reflect the Legislature's intention that the severity of the crime now be the most single important factor in the sentencing process." State v. Megargel, 143 N.J. 484, 500, 673 A.2d 259 (1996). Presumptive terms play an important role in achieving these goals of rationality, uniformity, the elimination *291 of disparity, and the imposition of a sentence to fit the offense. State v. Towey, supra, 114 N.J. at 79, 552 A.2d 994. A presumptive term provides a benchmark which may be adjusted "upward or downward depending on [the court's] evaluation and balancing of the aggravating and mitigating factors listed in N.J.S.A. 2C:44-1(a) and (b)." Ibid. The absence of a presumptive term or other benchmark to guide imposition of a carjacking sentence beyond the mandatory minimum impairs the achievement of those goals, in light of the twenty-year range of permissible discretionary sentence. See, e.g., State v. Williams, supra, in which the court sentenced defendant to the minimum term, ten years imprisonment with five years of parole ineligibility, for a carjacking based on the use of force.
We conclude, therefore, that trial courts must look to the alternative elements of carjacking to guide their sentencing discretion, in conjunction with the aggravating and mitigating factors applicable to all sentencing decisions. See State v. Jarbath, 114 N.J. 394, 400-01, 555 A.2d 559 (1989) (noting that in the Criminal Code's sentencing scheme there is "an important function for appellate courts in clarifying relevant standards, promoting consistent interpretation of sentencing guidelines, and enhancing uniformity in the application of statutory standards to similar facts under similar circumstances"). As indicated, the statute elevates an unlawful taking to a carjacking if the unlawful taking is accompanied by any one of four elements. Element a(1) is the most serious additional fact: the infliction of bodily injury or the use of force. Element a(4), operation of the vehicle with the lawful occupant remaining in it, ordinarily would be the least serious carjacking.[2] Elements a(2) and a(3), the threat of bodily injury or the commission or threat to commit a first or second degree crime, are of intermediate concern.
*292 We are persuaded that the Legislature intended that the high end of the sentencing range be reserved for the carjackings that involve the most serious accompanying elements. See State v. Megargel, supra, 143 N.J. at 500, 673 A.2d 259 (noting that "[t]he surrounding circumstances of an offense may make it very similar to a lower degree offense, thus suggesting that a downgraded sentence may be appropriate."). In the present case, defendant was convicted under a(4), the least serious accompanying element. Yet the court's sentence of twenty-five years with twelve and one-half years of parole ineligibility approaches the maximum available carjacking sentence. Indeed, the sentence approaches the maximum available for aggravated manslaughter. N.J.S.A. 2C:11-4c.
The trial court focused on defendant's criminal record. It began in 1981, and it is extensive. With one exception, however, all of defendant's convictions have been in municipal court and involved shoplifting, petty theft and disorderly persons drug offenses. Those offenses are the consequences of defendant's addiction to heroin and cocaine. The only exception is a conviction for aggravated assault on a police officer, a third degree offense, for which he was sentenced to three years in prison. We infer that the aggravated assault was under N.J.S.A. 2C:12-1b(5)(a), a simple assault on a law enforcement officer.
Under the carjacking statute the court had to impose ten years imprisonment with five years of parole ineligibility. The trial court's determination that defendant should receive more than the minimum mandatory sentence because of his record is unassailable. We must keep in mind, however, that defendant was being sentenced for a carjacking under the least egregious definition of that offense and that "the severity of the crime is now the single most important factor in the sentencing process." Hodge, supra, 95 N.J. at 379, 471 A.2d 389.
Because this is an issue of first impression, the trial court did not have the benefit of our analysis. Consequently, we vacate the base term and period of parole ineligibility imposed for the *293 carjacking and remand for resentencing on that charge. In all other respects the judgment of conviction is affirmed.
NOTES
[1] Regarding this mitigating factor, the sentencing court stated:

That no harm was contemplated is also nonsense. The harm was the continuation of a skein of taking other people's property. First you took the aspirin or the Advil or whatever it was, then you took a car. So that no harm was contemplated is incredible.
[2] In some cases, an a(4) offense may be especially egregious, e.g., if an infant is the remaining occupant, or the perpetrator further victimizes the occupant by committing a third or fourth degree crime.