732 A.2d 549 (1999)
323 N.J. Super. 157
STATE of New Jersey, Plaintiff-Respondent,
v.
Oscar HENRY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 8, 1999.
Decided July 13, 1999.
*550 Ivelisse Torres, Public Defender, for defendant-appellant (Cecelia Urban, Assistant Deputy Public Defender, of counsel and on the brief).
William H. Schmidt, Bergen County Prosecutor, for plaintiff-respondent (Susan W. Sciacca, Assistant Prosecutor, of counsel and on the brief).
Before Judges HAVEY, SKILLMAN and LESEMANN.
The opinion of the court was delivered by LESEMANN, J.S.C. (temporarily assigned).
On appeal following his guilty plea to a number of charges related to a carjacking, defendant raises two issues: first, that a charge of hindering apprehension by running from the police did not state an offense, and should have been dismissed; and second, that his sentence was excessive. The State acknowledges that the hindering apprehension charge should have been dismissed. With respect to the sentencing, it acknowledges some errors in the proceeding but argues that the sentence imposedtwenty years imprisonment with ten years parole ineligibility was unaffected by those errors and should stand. We agree that the conviction for hindering apprehension based on defendant's running from the police must be set aside, but we also conclude that because of a number of errors and questionable procedures, the matter should be remanded for re-sentencing. Accordingly, we reverse.
*551 Defendant's cousin, Anthony Lopez, and his aunt, Inez Osario, were the principal actors in the carjacking which forms the heart of this case. The victim was Louis Lodato and the motive was revenge for Lodato's having fired Osario from her job. Defendant's participation consisted of his stealing a handgun from his uncle and giving it to one of the carjackers, together with acting as a look-out while Lopez and Osario got into Lodato's car and held him at gun point. Lodato managed to escape, after which defendant joined Osario and Lopez in the car and all drove off. Later they left the car and went their separate ways. Defendant was stopped by a police officer and, when questioned, attempted to run from the officer but was soon apprehended. He was indicted on seven counts including first-degree carjacking (N.J.S.A. 2C:15-2); second-degree attempted kidnaping (N.J.S.A. 2C:5-1 and 2C:13-1b); first-degree robbery (N.J.S.A. 2C:15-1); fourth-degree aggravated assault (N.J.S.A. 2C:12-1b(4)); second-degree possession of a weapon for an unlawful purpose N.J.S.A. 2C:39-4a); third-degree unlawful possession of a weapon (N.J.S.A. 2C:39-5b); and third-degree hindering apprehension (N.J.S.A. 2C:29-3(b)). Lopez and Osario were charged under the same counts (except for the hindering apprehension charge), and another aunt of defendant, Angelina Lopez, was charged in an eighth count with violating N.J.S.A. 2C:39-3a, hindering the apprehension of another.
Defendant initially rejected a plea agreement but shortly after trial began, he changed his mind and pleaded guilty to all the charges against him, without a plea agreement. He then testified as a State's witness against Osario and, according to the prosecutor, was instrumental in securing Osario's conviction. Both Osario and Anthony Lopez, who had not yet been tried, thereafter became fugitives and have not yet been apprehended. The fourth defendant, Angelina Lopez, pleaded guilty to the charge against her, was sentenced to three-years probation, and thereafter received a 364-day jail sentence for violation of that probation.

I
The State acknowledges that count seven of the indictment, which charged defendant with hindering apprehension of a fugitive by running from the police, did not charge an offense and a finding of guilt thereunder was in error. We agree.
Count seven charges a violation of N.J.S.A. 2C:29-3b(1) which states that one commits an offense if "with purpose to hinder his own apprehension, prosecution, conviction, or punishment," he:
(1) suppresses, by way of concealment or destruction, any evidence of the crime or tampers with a document or other source of information, regardless of its admissibility in evidence, which aids in his discovery or apprehension or in the lodging of a charge against him[.]
The indictment charges that defendant violated that provision by concealing evidence of the crime, "specifically himself;" i.e., that defendant himself constituted evidence of the crime and by running away (or concealing himself) he violated N.J.S.A. 2C:29-3b(1).
N.J.S.A. 2C:29-3 is part of Chapter 29, of the Criminal Code, which is entitled "Obstructing Governmental Operations; Escapes". N.J.S.A. 2C:29-1 is also part of that chapter and sub-section a thereof reads as follows:
A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of intimidation, force, violence or physical interference or obstacle, or by means of any independently unlawful act. This section does not apply to flight by a person charged with crime, refusal to submit to arrest, ... or any other means of avoiding compliance with law *552 without affirmative interference with governmental functions.

[Emphasis added.]
That provision thus squarely addresses, and rejects, the theory embodied in count seven of the indictment.
While it is theoretically possible that, even though the quoted statement makes clear that N.J.S.A. 2C:29-1 does not criminalize "flight by a person charged with crime," N.J.S.A. 2C:29-3b(1) might nevertheless have that effect, that conclusion seems unlikely. A more reasonable reading is that the latter section refers to a more conventional form of concealment or destruction of evidence, without indulging in the almost metaphysical concept of the defendant's body itself constituting evidence of the crime. That conclusion is made even clearer by the Comment to N.J.S.A. 2C:29-1 submitted by the Criminal Law Revision Committee with its proposed new code:
The exception in this Section [2C:29-1a] for flight, refusal to submit to arrest, and other forms of non-submission to authority, are necessary to prevent an overly broad application of the term "physical interference" and "unlawful act." One who runs away from an arresting officer or who makes an effort to shake off the policeman's detaining arm might be said to obstruct the officer.... But these are not cases within the contemplation of a Section concerned with affirmative subversion of government processes.
Our conclusion is also supported by the fact that in N.J.S.A. 2C:29-2, the Legislature addressed those circumstances under which fleeing a police officer may constitute an offense. Thus, under subsection b of that section, N.J.S.A. 2C:29-2b, one driving a motor vehicle who "flees or attempts to elude" a police officer is guilty of a third degree offense, or, if the flight creates a "risk of death or injury to another," it constitutes a second degree offense. Similarly, under subsection a, N.J.S.A. 2C:29-2a, it is a disorderly persons offense to prevent a law enforcement officer from effecting a lawful arrest, unless "physical force or violence" is employed, or the action creates a "substantial risk of causing physical injury," in which case the action constitutes a fourth degree offense.
In view of the foregoing, as well as the State's candid acknowledgment of error, we are satisfied that defendant's conviction and sentence for an alleged violation of N.J.S.A. 2C:39-3(b)(1) must be reversed.

II
It is by now axiomatic that this court will seldom interfere with a trial court's discretionary imposition of sentence. So long as the sentencing judge applies the proper standard and proceeds in the manner prescribed by the Criminal Code and controlling decisions of our Supreme Court, a rational and reasonable exercise of discretion and judgment will not be upset. State v. Gardner, 113 N.J. 510, 516, 551 A.2d 981 (1989); State v. Roth, 95 N.J. 334, 362-65, 471 A.2d 370 (1984); State v. Zadoyan, 290 N.J.Super. 280, 288, 675 A.2d 698 (App.Div.1996). Here, however, while certain aspects of the sentencing involved just such discretionary determinations, others are more troublesome.

A.
The carjacking statute, N.J.S.A. 2C:15-2, represents an elevation of what would otherwise be an "unlawful taking" of a motor vehicle under N.J.S.A. 39:1-1 into a first-degree offense. State v. Zadoyan, supra, 290 N.J.Super. at 291, 675 A.2d 698. The elevation occurs when one committing an "unlawful taking" also does one or more of the following acts:
(1) inflicts bodily injury or uses force upon an occupant or person in possession or control of a motor vehicle;
(2) threatens an occupant or person in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediate bodily injury;

*553 (3) commits or threatens immediately to commit any crime of the first or second degree; or
(4) operates or causes said vehicle to be operated with the person who was in possession or control or was an occupant of the motor vehicle at the time of the taking remaining in the vehicle.
Carjacking involves particularly heavy penalties. Although it is designated a first-degree offense, the penalty is fixed at between ten and thirty years with a minimum mandatory sentence of five years of parole ineligibility.
The carjacking statute also omits specification of the "presumptive term" which is usually set out in the Criminal Code. To deal with that omission, this court, in State v. Zadoyan, supra, set out a procedure to guide sentencing judges dealing with the extraordinarily broad, twenty-year range of discretionary sentencing available under N.J.S.A. 2C:15-2. The essence of that process, we held, was to determine first which of the four elevating factors had been present in the case before the court and had caused what would otherwise be an unlawful taking to constitute carjacking instead. Since those four statutory factors varied in seriousness, the sentence to be imposed for a carjacking would vary depending on which factor (or factors) was present. Thus, we concluded that element a(1) was the
most serious additional fact; the infliction of bodily injury or the use of force. Element a(4), operation of the vehicle with the lawful occupant remaining in it, ordinarily would be the least serious carjacking. Elements a(2) and a(3), the threat of bodily injury or the commission or threat to commit a first or second degree crime, are of intermediate concern.

[Id. at 291, 675 A.2d 698; (Footnote omitted).]
On appeal the State acknowledges that the carjacking here was not at the top of the scale employed in Zadoyan, since the victim had not been injured. It contends, however, that the crime was "extremely serious" since it involved a gun, a risk of serious injury and the commission or threat of other crimes including kidnaping and robbery. We agree with that analysis. There was no injury here nor was there use of force. There was, however, a threat of bodily injury and a threat of force and the victim was put in fear of injury. There was also a threat to commit first or second degree crimes (kidnaping and robbery), and thus both the second and third of the statutory elevating factors were present. Under the Zadoyan analysis, the offense here would thus rank as one of "intermediate concern"less serious than one involving the first factor ("bodily injury" or the use of "force") but more serious than one involving only the fourth factor. Given the use of a gun and the threat of injury, however, the offense would lie on the high side of that intermediate range.
Defendant argues that the trial court erred by improperly beginning its analysis with the maximum sentence of thirty years and then purporting to work down from that level. The State disputes that claim and argues that the court only reached the maximum range after its analysis of the elements of the offense. However, in its argument during sentencing, the State quite clearly argued that "The Zadoyan case states that you really should ... start with the maximum. You start with thirty...." The court seemed to accept that proposition, saying at one point, "And as the Prosecutor said, it starts at the top ... rung, the thirty years and works down."
It is not completely clear just how the court performed the Zadoyan analysis here, although it is clear that the court ultimately concluded that the carjacking before it constituted "the most serious carjacking potential." Since the first class of elevating factors ("infliction of bodily injury or the use of force") was absent, however, that conclusion was not correct. A presumptive term less than the maximum, although above the median, (perhaps 25 years unless the sentencing court has some reason to employ a different number) would be an appropriate *554 starting point from which to begin application of aggravating and mitigating factors. Thirty years was not.

B.
There were other errors or misstatements during sentencing, some of which were significant.
First, the court indicated a mistaken belief that it was dealing with a plea agreement:
This was a negotiated plea agreement between the Prosecutor and the defendant. In deciding whether or not to accept the plea agreement the Court considered the nature and degree of the crimes.
The prosecutor then reminded the court that there had not been a negotiated plea, but rather defendant had simply pled to the indictment without an agreement. The reference to a twenty-year sentence with a ten-year non-parole stipulation, the prosecutor said, was merely his recommendation. The court acknowledged that initial misunderstanding, but later, as the matter proceeded, it once again spoke of a plea agreement, and it is not clear that in its final sentencing, the court clearly understood that there was no agreement.
In its discussion of aggravating and mitigating factors the court concluded that "the aggravating factors do outweigh the mitigating factors." Its basis for that conclusion is unclear. In fact, the contrary conclusion seems almost overwhelming.
One aggravating factor which the court referred to was the use of a stolen motor vehicle in the commission of the crime. However, as the State acknowledges, that represents an improper "double counting" since the stolen car referred to was the victim's own cara factor that constituted an essential part of the hijacking offense and thus could not also represent an aggravating factor in sentencing for that offense.
Although the court acknowledged defendant's lack of a prior record as a mitigating factor, it said virtually nothing of one of the most significant factors in the case, acknowledged by the prosecutor during sentencing and also on the present appeal: Defendant was quite young, of limited intellect and a person who was easily swayed. Throughout the incident, he was under the virtual domination of someone who was not only older than him, but was also his aunt.
Further, one of the factors noted by the prosecutor, which should have been a strong mitigating factor, seems to have actually worked to defendant's detriment. The prosecutor praised defendant's cooperation with the police. He described him as "cooperative". He said he showed no "disrespect to the police" and "answered the questions." The detective involved, the prosecutor said, "had nothing but good things to say about" defendant. Further, the prosecutor said defendant "sealed" the case against Inez Osario:
I just brought him [defendant] into the courtroom and hoped for the best. And it turns out that in my opinion, Oscar Henry told what happened the best he could and he explained to a jury in the case against Inez Osario.
And since he did tell the truth I was able to offer other evidence that corroborated what he said by independent witnesses that witnessed the same thing, even though no one else saw the actual robbery take place. And it was because of that that Inez Osario was convicted.
In sentencing, however, while noting defendant's cooperation in testifying against Osario, the judge pointed out that the other active participant in the hijacking, Anthony Lopez, was still a fugitive and had never been tried. In order to assure defendant's subsequent cooperation in a trial of Lopez, the court seems to have imposed a greater sentence than it otherwise would have imposed, with a stated intention to reduce that sentence later if and when defendant cooperated against Lopez:
I will tell you now if you do testify in regard to Mr. Lopez I will delightfully entertain any new reconsideration of sentence motion in that regard while *555 you're going inside at that point of time. That is a carrot for you at this point in time if you testify at this point.
Thereafter, the court repeated the point:
You're going to serve at least the 10 years. The 10 years without parole disqualifer unless you testify in regard to the case in regard to Mr. Lopez. I will entertain that application, any motion for reconsideration thereafter. I was impressed with the with the 12 year[1]  at this point in time to give you a sentence that would be less at this point in time would give you no impetus to testify in regard to Mr. Lopez. I want you to be available to testify the way you testified in the Osario and I will favorably entertain any motion at that time.... That can be reduced if you testify favorably.
Defendant argues that the court's treatment of that issue is unfair and unreasonable. We agree. This is not a case in which a defendant refused cooperation and there is some basis for imposing a greater sentence than a cooperative defendant would have received. Here, by the prosecutor's own presentation, defendant has been completely cooperative. There is no reason to expect him to act differently in the future. His ability to testify against Lopez is dependent on something obviously beyond his controlLopez' apprehension. To suggest that the penalty imposed is greater than it otherwise would be because a lesser penalty would leave "no impetus" for defendant to testify against Lopez is unfair.
The apparent misunderstandings and errors which occurred during this sentencing convince us that the matter requires a new sentencing. Accordingly, the matter is remanded for re-sentencing consistent with this opinion.
NOTES
[1] The reference apparently is to defense counsel's request for a twelve-year sentence with five years of parole ineligibility.