981 A.2d 83 (2009)
410 N.J. Super. 182
STATE of New Jersey, Plaintiff-Respondent,
v.
Raafiq LEONARD, Defendant-Appellant.
DOCKET NO. A-4330-07T4
Superior Court of New Jersey, Appellate Division.
Argued September 22, 2009.
Decided October 15, 2009.
Stephen P. Hunter, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Hunter, of counsel and on the brief).
Luanh L. Lloyd, Assistant Essex County Prosecutor, argued the cause for respondent *84 (Paula T. Dow, Prosecutor, attorney; Ms. Lloyd, on the brief).
Before Judges WEFING, GRALL and LeWINN.[1]
The opinion of the court was delivered by
WEFING, P.J.A.D.
Tried to a jury, defendant was convicted of conspiracy to commit carjacking, N.J.S.A. 2C:5-2; carjacking, N.J.S.A. 2C:15-2; robbery while armed, N.J.S.A. 2C:15-1; receiving stolen property, N.J.S.A. 2C:20-7; possession of a prohibited weapon, a sawed-off shotgun, N.J.S.A. 2C:39-3(b); and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). He was found not guilty of eluding law enforcement. N.J.S.A. 2C:29-2(b). When defendant appeared before the trial court for sentencing, the court merged defendant's conviction for conspiracy into the conviction for carjacking. It also merged the conviction for possession of a weapon for an unlawful purpose into the conviction for robbery. It sentenced defendant to twenty years in prison for carjacking, subject to the provisions of the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2. Defendant's remaining sentences were concurrent: twenty years subject to NERA for robbery while armed, five years for receiving stolen property and five years for possession of a prohibited weapon. Defendant has appealed his conviction and sentence. After reviewing the record in light of the contentions advanced on appeal, we affirm.
Defendant's convictions were based upon an incident that occurred shortly after 10:00 p.m. on the evening of December 16, 2005. Joseph Wright went to the home of a friend to play some poker. He left to drive home after he lost his money but agreed to drop off another friend downtown. After doing so, he noticed an ATM machine across the street; he parked his car and walked across the street to withdraw some cash. He withdrew $200 and put the money (which the machine had counted out in twenty-dollar bills) into his wallet and then went to a nearby restaurant to purchase some food to take with him. When he returned to his car, he saw that another car had parked directly in front of his vehicle. This car was so close to the front of Wright's car that he could not maneuver his own car out of his parking spot because Wright's car could not go into reverse. Wright testified that this car was red and that its rear window was missing, with the opening covered by plastic tape. The driver's door was open, and an individual was sitting in the driver's seat with his foot hanging out.
Wright asked the driver to move his car forward so Wright could pull out and leave but received no response. He became conscious of someone walking up behind him. He turned and saw another man standing there, holding "something on his sleeve," which turned out to be a sawed-off shotgun. The person pointed the gun at Wright's chest and demanded that Wright hand over what he had. Wright dropped his money, car keys and cell phone onto the ground. The man picked up everything Wright had dropped, got into Wright's car and both vehicles drove away. Wright went to a nearby phone and called the police and reported what had happened.
Later, while Wright was still providing information to the police about the incident, the police received a report of an automobile accident involving a red car. *85 They took Wright to the scene, and he identified the car as the one that had parked so as to block his vehicle from leaving. Wright gave his cell phone number to one of the officers who had accompanied him to the scene. That officer dialed the number, and a cell phone in the red car began to ring. Defendant was seated in the rear of a nearby police car, and Wright identified him as the person who had stolen his car. Wright also identified defendant in the courtroom. A search of the car turned up a sawed-off shotgun. Defendant had $184 in his possession, comprised of $160 in twenty-dollar bills, fifteen dollars in five-dollar bills and nine one-dollar bills.
On appeal, defendant raises the following contentions:
POINT I DEFENDANT WAS DENIED HIS RIGHT UNDER THE CONFRONTATION CLAUSE "TO IMPEACH [THE STATE'S PRIMARY] WITNESS WITH HIS CRIMINAL RECORD." VASQUEZ V. JONES, 496 F.3D 564, 571 (6TH CIR.2007). ADDITIONALLY, THE JUDGE ABUSED HIS DISCRETION BECAUSE "THE STATE WOULD NOT HAVE SUFFERED UNDUE PREJUDICE SUFFICIENT TO OUTWEIGH THE PROBATIVE VALUE OF THE PRIOR CONVICTION[ ]" STATE V. BALTHROP, 92 N.J. 542, 546, 457 A.2d 1152 (1983). U.S. Const. Amends. VI, XIV; N.J. Const. Art. I, ¶ 10.
POINT II THE SENTENCE FOR THIS YOUTHFUL DEFENDANT WAS EXCESSIVE AND A REMAND IS REQUIRED BECAUSE THE JUDGE FAILED TO APPLY THE APPROPRIATE STANDARDS UNDER STATE V. ZADOYAN, 290 N.J.SUPER. 280, 675 A.2d 698 (APP.DIV.1996). U.S. Const. Amend. VI, XIV; N.J. Const. Art I, ¶¶ 1, 9, 10.
Prior to Wright's taking the stand, the prosecution sought a ruling barring defendant's attorney from raising in her cross-examination of Wright the fact that he had been convicted of third-degree aggravated assault in 1993. After hearing argument from the attorneys, the trial court agreed with the prosecution and ruled that Wright could not be cross-examined on that issue. Defendant now contends that this ruling constitutes reversible error.
Defendant points to Vasquez v. Jones, 496 F.3d 564 (6th Cir.2007), to support his contention. We consider Vasquez, however, to be clearly distinguishable from the present matter. The defendant in that case was convicted of firing the fatal shot, during a shootout, which killed an innocent bystander. 496 F.3d at 567. The fatal shot was fired from a 9-millimeter gun. Ibid. During the investigation of the shooting, the defendant admitted firing a.22 caliber rifle in self-defense, but a witness testified at a preliminary hearing that he had seen the defendant fire a handgun. Ibid. By the time of the defendant's trial, that witness could not be located, and the prosecution was successful in introducing into evidence the witness's testimony at the preliminary hearing under Michigan's equivalent to N.J.R.E. 804(b). Ibid. In response, the defendant sought to introduce evidence of that witness's prior convictions, a subject which had not been explored at the preliminary hearing; the trial court, however, barred the defendant from doing so. Ibid. After exhausting his state appellate rights, the defendant filed a petition for habeas corpus in the federal courts. Id. at 568. The Sixth Circuit concluded that the defendant's right to challenge the credibility of the absent witness was improperly abridged. Id. at 574. It also concluded that this could not, in the *86 context of the defendant's trial, be deemed harmless error. Id. at 574-78.
The Sixth Circuit noted several factors in support of this latter conclusion. These included the importance of the testimony of the absent witness to the prosecution's case, id. at 575; that the testimony was not cumulative, id. at 576; that there was no physical evidence corroborating the statement of the absent witness, ibid.; there was little cross-examination of the absent witness at the preliminary hearing, id. at 577; and, finally, without that testimony, the prosecution did not have a strong case. Ibid.
Here, on the other hand, while Wright's testimony was undeniably important to the State's case, he was fully cross-examined in the presence of the jury about discrepancies between his testimony at trial and his statement to the police the night of the incident. In addition, his testimony was corroborated by the fact that his cell phone was discovered in the red car, together with a sawed-off shotgun, and the currency in defendant's possession closely matched what Wright had just withdrawn from the ATM machine.
We also note that the opinion of the Sixth Circuit refers to the absent witness having "prior criminal convictions," id. at 567, thus clearly indicating that the witness had been convicted on more than one occasion. Here, Wright had had only one brush with the criminal justice system. The opinion of the Sixth Circuit is silent as to when the absent witness was convicted of these multiple offenses. Here, on the other hand, approximately fifteen years had elapsed since Wright's one conviction was recorded, and he had had no further encounters in the interim. Wright's conviction, moreover, was not for an offense which involved "lack of veracity, dishonesty or fraud." State v. Sands, 76 N.J. 127, 144, 386 A.2d 378 (1978).
Ultimately, the decision whether to admit a prior conviction for purposes of attacking the credibility of a witness rests within the sound discretion of the trial court. State v. Hutson, 211 N.J.Super. 49, 53, 510 A.2d 706 (App.Div.1986), aff'd, 107 N.J. 222, 526 A.2d 687 (1987). A trial court has the authority to place "reasonable limitations" upon a defendant's cross-examination of a witness. Vasquez, supra, 496 F.3d at 571.
Neither Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), nor Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), advance defendant's case. In Davis, the witness in question had a particular motive to shade his testimony to favor the prosecution. Vasquez, supra, 496 F.3d at 570. There is no indication of such a motivation here. In Van Arsdall, the Court applied a harmless error analysis to a restriction on cross-examining a prosecution witness as to a prior conviction. Vasquez, supra, 496 F.3d at 574.
Defendant also points to State v. Balthrop, 92 N.J. 542, 457 A.2d 1152 (1983), to bolster his argument that his conviction should be reversed because of the trial court's ruling limiting the scope of cross-examination of Wright. In Balthrop, the Supreme Court affirmed our determination that the defendant was entitled to a new trial because the trial court had not permitted the defendant to confront witnesses who had identified her as the driver of the getaway car with their prior convictions. Id. at 543, 457 A.2d 1152. In that case, however, there was no evidence linking the defendant to the crime other than the identification testimony of these witnesses. Id. at 544, 457 A.2d 1152. Here, however, as we have noted, there was substantial, independent corroboration of defendant's involvement in this incident.
*87 Balthrop, moreover, does not stand for the proposition that all prior convictions of prosecution witnesses are admissible. In State v. Minter, 222 N.J.Super. 521, 526-27, 537 A.2d 732 (App.Div.1988), we upheld the trial court's exclusion of two twenty-year-old convictions of a prosecution witness. Although the Supreme Court reversed our decision on other grounds, it specifically left that ruling, made several years after Balthrop, in place. State v. Minter, 116 N.J. 269, 273, 561 A.2d 570 (1989).
Having reviewed this record, we are unable to conclude that the trial court's ruling barring defendant from cross-examining Wright as to this remote, unrelated conviction constituted an abuse of its sound discretion.
Defendant's remaining argument is addressed to his sentence, both with respect to the trial court's analysis and the quantum. He points to our opinion in State v. Zadoyan, 290 N.J.Super. 280, 291, 675 A.2d 698 (App.Div.1996), in which we held that trial courts, in sentencing a defendant for the crime of carjacking, "must look to the alternative elements of carjacking to guide their sentencing discretion." Defendant maintains that this trial court did not do so, and thus he is entitled to be resentenced. We disagree.
Initially, we note that the analytical premise underlying Zadoyan, the absence of a presumptive term for the crime of carjacking, id. at 290-91, 675 A.2d 698, has been substantially weakened in light of the Supreme Court's abolition of presumptive sentencing in State v. Natale, 184 N.J. 458, 487, 878 A.2d 724 (2005). Defendant's sentence, nonetheless, is in the mid-range of permissible sentences for the crime of carjacking. N.J.S.A. 2C:15-2(b). Further, the defendant in Zadoyan was convicted of what the court considered the least serious form of carjacking. Zadoyan, supra, 290 N.J.Super. at 292, 675 A.2d 698. Here, however, the victim's car was stolen after he was threatened with a sawed-off shotgun. In such a context, we consider State v. Henry, 323 N.J.Super. 157, 164, 732 A.2d 549 (App.Div.1999), to be instructive.
Under the Zadoyan analysis, the offense here would thus rank as one of "intermediate concern"less serious than one involving the first factor ("bodily injury" or the use of "force") but more serious than one involving only the fourth factor. Given the use of a gun and the threat of injury, however, the offense would lie on the high side of that intermediate range.
The trial court, in imposing sentence upon defendant, noted his extensive juvenile record. According to defendant's pre-sentence report, his involvement with the criminal justice system commenced when he was eleven years old. Fifteen petitions were filed against defendant, and he was adjudicated delinquent seven times. Further, additional charges had been lodged against defendant after this incident. We discern no basis to interfere with the trial court's exercise of its sentencing power.
Defendant's conviction and sentence are affirmed.
NOTES
[1] Judge LeWinn did not participate at oral argument, but with the consent of the parties, she has participated in the disposition of this appeal.