849 A.2d 221

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JASON M. BERARDI, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 4, 2004—Decided June 3, 2004.

446

---

Before Judges CIANCIA, ALLEY and R.B. COLEMAN.

*Yvonne Smith Segars,* Public Defender, attorney for appellant (*Susan Green,* Assistant Deputy Public Defender, of counsel and on the brief).

*Theodore J. Romankow,* Union County Prosecutor, attorney for respondent (*Steven J. Kaflowitz,* Assistant Prosecutor, of counsel; *Amy F. Newcombe,* on the brief).

The opinion of the court was delivered by

ALLEY, J.A.D.

Defendant was charged in a Union County indictment with aggravated assault, second-degree, *N.J.S.A.* 2C:12–1(b)(1) (Count One); carjacking, first-degree, *N.J.S.A.* 2C:15–2 (Count Two); robbery, first-degree *N.J.S.A.* 2C:15–1 (Count Three); and theft, third-degree, *N.J.S.A.* 2C:20–3 (Count Four). The case arose out of an incident on December 2, 2001, which allegedly started at the North Brunswick home of the parents of defendant's girlfriend. An argument escalated to an encounter between defendant and the girlfriend's father, Bruce Walters, in which the latter was injured. Hearing sirens apparently heralding the approach of police officers, defendant fled from the scene and then, after having obtained a ride from a limousine service in a vehicle driven by Jessie Edwards, he allegedly put Edwards in fear of injury while Edwards was driving. Edwards fled from the car and defendant drove off with it. The property that was the subject of the alleged robbery included not only the car but also other property that Edwards left in the car when he fled such as a small television, $100 in cash, and a briefcase. Defendant, it was further asserted, not only thereupon drove to Newark and bought drugs, he kept the car for about a day during which time he made a couple of hundred dollars transporting fares.

In a jury trial, defendant was found guilty of first-degree carjacking (Count Two) and third-degree theft (Count Four). He was found guilty on Count Three of second-degree robbery as a lesser-included offense of first-degree robbery, the jury having acquitted him of the first-degree charge because it determined that he had not been armed and did not use or threaten the immediate use of a deadly weapon. Defendant was also acquitted of second-degree aggravated assault as charged in Count One and

convicted of the lesser-included offense of third-degree aggravated assault.

The trial judge sentenced defendant to four years incarceration on the Count One aggravated assault conviction and a concurrent twenty-year term of incarceration for the carjacking conviction on Count Two, subject to an eighty-five percent parole disqualifier under the No Early Release Act (NERA), *N.J.S.A.* 2C:43-7.2(d)(10). Counts Three and Four were merged into Count Two and appropriate fines and assessments were imposed.

On appeal, defendant contends as follows:

*POINT I:* THE TRIAL COURT'S CHARGE TO THE JURY ON CARJACK-ING, WHICH INCLUDED A THEORY OF THE CASE NOT CHARGED IN THE INDICTMENT, VIOLATED MR. BERARDI'S CONSTITUTIONAL RIGHT TO INDICTMENT AND DUE PROCESS OF LAW. *N.J. CONST.* (1947), ART. I, PAR. 8; *U.S. CONST.,* AMEND. V. (Partially Raised Below)

*POINT II:* GIVEN THE CIRCUMSTANCES OF THIS OFFENSE, INCLUD-ING THE FACT THAT IT STARTED AS A DOMESTIC SQUABBLE, AND THAT DEFENDANT WAS HOMELESS AND ADDICTED TO DRUGS AT THE TIME, A TWENTY-YEAR TERM OF INCARCERATION, SUBJECT TO THE 85 PERCENT PAROLE PROVISION OF NERA, IS MANIFESTLY EXCESSIVE.

■ We first address defendant's contention that his conviction should be reversed because he was indicted for one type of carjacking and yet the judge charged and submitted to the jury two types of carjacking. The carjacking statute, which is set forth in *N.J.S.A.* 2C:15-2(a), has four subparts, numbered (1) through (4), and the crime of carjacking consists of any one of those four categories: The statute defines carjacking as follows:

A person is guilty of carjacking if in the course of committing an unlawful taking of a motor vehicle, as defined in *N.J.S.* 39:1-1, or in an attempt to commit an unlawful taking of a motor vehicle he:

(1) inflicts bodily injury or uses force upon an occupant or person in possession or control of a motor vehicle;

(2) threatens an occupant or person in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediate bodily injury;

(3) commits or threatens immediately to commit any crime of the first or second-degree; or

(4) operates or causes said vehicle to be operated with the person who was in possession or control or was an occupant of the motor vehicle at the time of the taking remaining in the vehicle.

The indictment charged defendant with the following carjacking offense, namely that:

In the course of committing an unlawful taking of a motor vehicle [he] ... did threaten immediate bodily injury to Jessie Edwards and/or did purposely or knowingly put Jessie Edwards in fear of immediate bodily injury while the said Jessie Edwards was an occupant and/or in possession or control of a motor vehicle....

Thus, the indictment charged defendant with only one type of carjacking, specifically, the one set forth in *N.J.S.A.* 2C:15–2(a)(2). Notwithstanding the specific language of the indictment to that effect, when instructing the jury, and with what we take to be the concurrence on the record of defendant's counsel, the court told the jurors to consider not only the indicted charge of carjacking but also a category of carjacking defendant had never been indicted for, that is, the crime of carjacking specified in *N.J.S.A.* 2C:15–2(a)(3). As mentioned, that provision applies where a defendant "in the course of committing an unlawful taking of a motor vehicle ... (3) commits or threatens immediately to commit any crime of the first or second-degree...." We cannot know from the jury verdict sheet or from the transcript of the return of the verdict which type of carjacking the jury convicted defendant of, that is, whether it was the one charged in the indictment, *N.J.S.A.* 2C:15–2(a)(2), or the one not charged in the indictment, *N.J.S.A.* 2C:15–2(a)(3), or whether it convicted him of both.

In our view it was error for the court to submit the unindicted carjacking charge to the jury. The better procedure would have been for the State to amend the indictment, but the issue for us on appeal is whether the jury instruction was clearly capable of producing an unjust result. *See R.* 2:10–2. This is an issue that to us is not free from doubt. Nevertheless, we normally hesitate to find plain error in the context of a criminal trial unless the error has had a real capacity to impair the defendant's right to a fair trial. *See State v. Marrero*, 148 *N.J.* 469, 496, 691 *A.*2d 293 (1997). We cannot overlook counsel's apparent approval on the

record of the charge which defendant now appeals. Trial errors "induced, encouraged, or acquiesced in or contended by defense counsel ordinarily are not a basis for reversal on appeal." *State v. Corsaro*, 107 *N.J.* 339, 345, 526 *A.*2d 1046 (1987) (quoting *State v. Harper*, 128 *N.J.Super.* 270, 277, 319 *A.*2d 771 (App.Div.), *certif. denied*, 65 *N.J.* 574, 325 *A.*2d 708 (1974)). Notwithstanding this limitation, if the error had prejudiced the integrity of the trial, we would not hesitate to order a new trial even though defense counsel may have precipitated the error. *See id.* at 346, 526 *A.*2d 1046.[1] We are persuaded, however, that such prejudice did not occur here. In particular, the jury was specifically instructed that an underlying basis for one of the carjacking charges was robbery. It also was specifically charged as to that crime of robbery. In these circumstances, and because defendant had also been indicted for robbery, the submission of the *N.J.S.A.* 2C:15–2(a)(3) carjacking charge to the jury could not reasonably have surprised defendant or caused prejudice to him in his preparation and defense of the case.

We are not unmindful that what ensued from the instructions at issue is a conviction carrying with it a potentially lengthy prison term, together with an eighty-five percent NERA parole disqualification. In our view, however, the conviction, or potential conviction, of defendant on an offense for which he was not indicted is, in the present circumstances, including counsel's position at trial, not so fundamentally violative of Art. I, Par. 8 of the New Jersey Constitution, which requires "indictment of a Grand Jury" in order for a person to "be held to answer for a criminal offense," that we can perceive a basis for affording relief under *R.* 2:10–2. Thus, we reject defendant's first contention as being without merit.

We next consider defendant's sentencing argument, and we do so against the backdrop of our decision with respect to carjack-

---

[1] We emphatically disagree with the State's suggestion that there was no error because the indictment referred to the carjacking statute in general, that is to *N.J.S.A.* 2C:15–2.

ing sentencing in *State v. Zadoyan*, 290 *N.J.Super.* 280, 675 *A.*2d 698 (App.Div.1996), a case with which the trial judge expressed familiarity in his discussions on the record with counsel at sentencing. As Judge D'Annunzio wrote in *Zadoyan*, although carjacking is a first-degree crime, there is "no presumptive term for carjacking beyond the mandatory minimum of ten years imprisonment with five years of parole ineligibility." *Id.* at 290, 675 *A.*2d 698. Moreover, in addition to bearing no presumptive term, carjacking is punishable by imprisonment for ten to thirty years, in contrast to the "ordinary term for a first degree crime [which] is between ten and twenty years, with a presumptive term of fifteen years." *Ibid.* (citing *N.J.S.A.* 2C:43–6(a)(1); *N.J.S.A.* 2C:44–1(f)(1)(b)). We held in *Zadoyan*

> that trial courts must look to the alternative elements of carjacking to guide their sentencing discretion, in conjunction with the aggravating and mitigating factors applicable to all sentencing decisions. *See State v. Jarbath*, 114 *N.J.* 394, 400–01, 555 *A.*2d 559 (1989) (noting that in the Criminal Code's sentencing scheme there is "an important function for appellate courts in clarifying relevant standards, promoting consistent interpretation of sentencing guidelines, and enhancing uniformity in the application of statutory standards to similar facts under similar circumstances"). As indicated, the statute elevates an unlawful taking to a carjacking if the unlawful taking is accompanied by any one of four elements. Element a(1) is the most serious additional fact: the infliction of bodily injury or the use of force. Element a(4), operation of the vehicle with the lawful occupant remaining in it, ordinarily would be the least serious carjacking. [footnote omitted]. Elements a(2) and a(3), the threat of bodily injury or the commission or threat to commit a first or second-degree crime, are of intermediate concern.
>
> We are persuaded that the Legislature intended that the high end of the sentencing range be reserved for the carjackings that involve the most serious accompanying elements. *See State v. Megargel, supra*, 143 *N.J.* at 500, 673 *A.*2d 259 (noting that "[t]he surrounding circumstances of an offense may make it very similar to a lower degree offense, thus suggesting that a downgraded sentence may be appropriate").
>
> [*Id.* at 291–92, 675 *A.*2d 698.]

In this case, despite the meticulous sentencing sensitivity commendably manifested by the trial court, we conclude that we must vacate the sentence imposed and remand for resentencing. We do so for the following reasons. At the time *Zadoyan* was decided, the following passage in the opinion gave a correct statement of the law: "The minimum mandatory sentence is ten years impris-

onment with five years of parole ineligibility. The court may sentence a defendant beyond the minimum to a maximum term of thirty years with exposure to a maximum period of parole ineligibility of fifteen years. *N.J.S.A.* 2C:43–6b." *Id.* at 289–90, 675 *A.*2d 698.

Although we thus correctly stated the existing law in *Zadoyan,* intervening developments have occurred which require us to revisit and reemphasize *Zadoyan's* underlying analysis and apply it with more detailed articulation. Those post-*Zadoyan* developments are the adoption of NERA and even more particularly of a 2001 amendment to NERA that makes NERA automatically applicable to carjacking. *N.J.S.A.* 2C:43–7.2(b)(10). Thus, although at the time our analysis in *Zadoyan* was formulated in 1996 carjacking was punishable by a minimum ten-year prison sentence, subject to a maximum parole disqualification of five years, when a carjacking occurs after the 2001 amendments to NERA, as defendant's crime did, the court is required to impose an eighty-five percent period of parole ineligibility. Thus, if this defendant had been convicted in 1996 when *Zadoyan* was decided and sentenced to a term of ten years imprisonment the maximum exposure to parole ineligibility would have been five years. By contrast, under current sentencing principles, his maximum exposure to parole ineligibility under NERA is instead eighty-five percent of ten years even if the minimum term of ten years is imposed. The mathematical correlation between the NERA eighty-five percent and the base term of course increases the parole ineligibility period in the degree that the base term is increased. As a result, to use as an example the base sentence of twenty years that was imposed here, defendant received a seventeen-year parole disqualifier, as opposed to the ten years that would have occurred at the time *Zadoyan* was decided.

We refer to all this because we are firmly convinced that in these circumstances, with a heightened sentencing impact as the consequence of the adoption of NERA and its now-mandatory application to carjacking cases, trial courts must apply even more

greatly refined sensitivity respecting the categorization of carjacking cases and its interplay with sentencing considerations under *Zadoyan.*

In particular, in this case, as we have noted, defendant was convicted of a category of carjacking that is next to the "least serious carjacking" as articulated in *Zadoyan.* In other words, defendant is entitled to have his sentencing determined on the premise that he was convicted of a type (3) carjacking rather than a type (2) carjacking. We say this because it is not determinable from the verdict or the jury verdict sheet that defendant was convicted of a more serious category of carjacking than the one defined in *N.J.S.A.* 2C:15–2(a)(3), "commits or threatens immediately to commit any crime of the first or second-degree." Moreover, the jury in its verdict specifically determined, and of course did so unanimously, that defendant was not "armed with" nor "did the defendant use or threaten to use immediate use of a deadly weapon." As a result defendant was convicted, not of armed robbery but of second-degree or unarmed robbery. Additionally, since for purposes of the robbery statute a deadly weapon need not be an instrument actually capable of causing death or serious bodily injury, but could be, as defined in *N.J.S.A.* 2C:11–1(c), one that merely "in the manner it is fashioned would lead the victim to believe it to be capable of producing death or serious bodily injury," we are bound by as well as guided by the jury's determination that not only did defendant not possess a real deadly weapon, but that he did not convey or even attempt to convey the impression that he had one. When the Legislature adopted NERA it did not repudiate the *Zadoyan* rationale which today we amplify. Similarly, it did not do so in 2001 when it adopted amendments to NERA which "changed [the law] in response to [various] ... Appellate Division decisions" and eliminated questions respecting NERA sentencing that had proliferated under the statute in its original form. *State v. Parolin,* 171 *N.J.* 223, 232, 793 *A.*2d 638 (2002). *See,* for example, *State v. Austin,* 335 *N.J.Super.* 486, 762 *A.*2d 1052 (App.Div.2000).

Thus, amplifying the *Zadoyan* scrutiny of carjacking sentencing in light of current sentencing realities, and viewing defendant's conduct in the context of the jury's determination that he committed a second-degree crime and neither used a deadly weapon or an apparent deadly weapon, it is evident that the sentencing for this category of carjacking in these particular circumstances should be accorded treatment that is appropriate for the least serious of the (a)(3) crimes and very close to the level of treatment to be accorded under *Zadoyan* to the carjacking category in subsection (a)(4), namely, operation of a vehicle with a lawful occupant remaining in it.

We are also persuaded in light of post-*Zadoyan* sentencing developments that the carjacking categories in subsections (a)(2) and (a)(3), and especially the type of crime of which defendant was convicted, should be sharply distinguished. We stated in *Zadoyan* that "[e]lements (a)(2) and (a)(3), the threat of bodily injury or the commission or threat to commit a first or second degree crime, are of intermediate concern." *Id.* at 291, 675 *A*.2d 698. "Intermediate" should not be read to mean, however, that all (a)(2) and (a)(3) carjackings, or even all (a)(3) carjackings, properly might be subjected to an undifferentiated lumping together for purposes of sentencing determinations. Rather, we emphasize that differentiation between different carjacking categories, and in this case within a particular carjacking category, (a)(3), should be a key factor in carjacking sentencing determinations. Consequently, we vacate the sentence for carjacking imposed on defendant and remand for resentencing, so that defendant and the State can argue for an appropriate sentence to be imposed upon a category of carjacking that is quite close to the lowest in sentencing severity. We mean no criticism of the learned trial judge, who obviously was striving with sensitivity and intelligence to reach a fair result. But the recent superimposition on the sentencing framework of NERA's mandatory parole disqualification for carjacking sentences impels a further and more detailed articulation of the principles of *Zadoyan*, and given the jury findings in this case, defendant's crime was as we have indicated little more

serious than the least serious category set forth in the carjacking statute that is, the category coming within the definition in subsection (a)(4). Viewed in that light, the twenty-year sentence must be vacated as excessive.

We take this step with full regard to the deference we owe sentencing determinations. *State v. Gardner*, 113 *N.J.* 510, 516, 551 *A.*2d 981 (1989); *State v. Roth*, 95 *N.J.* 334, 362–65, 471 *A.*2d 370 (1984); *See also Zadoyan, supra*, at 288, 675 *A.*2d 698. As we did in *Zadoyan*, we also refrain here from saying that the balance of aggravating and mitigating factors would not justify a sentence that is to some extent greater than the ten-year minimum term. We point out, however, that if on reconsideration the trial court considers it to be consistent with the record, the judge would be free in connection with re-sentencing to grant defendant mitigating factors not previously given him and take away aggravating factors that were. We emphasize that our decision is not intended to minimize the seriousness with which the crime of carjacking is rightly viewed but only to properly relate on a rational and principled basis, as *Zadoyan* did, the seriousness of the crime to the punishment it carries. Indeed, few persons would consider as anything other than serious a crime whose least-punished category bears a minimum of eight and one-half years of imprisonment without parole, as does carjacking, *N.J.S.A.* 2C:15–2(a)(4); *N.J.S.A.* 2C:43–7.2(d)(10).

We affirm defendant's conviction for first-degree carjacking. We vacate the sentence for carjacking and remand for resentencing as to that conviction. We do not retain jurisdiction.