**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5095-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KARIF FORD, a/k/a
KARIF H. KING, and
KHYRE KING,

     Defendant-Appellant.

_____

Submitted March 10, 2020 – Decided April 21, 2020

Before Judges Yannotti and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 14-09-2285 and 14-09-2286.

Joseph E. Krakora, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Frank J. Ducoat,

Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After the trial court denied his motion to suppress, defendant pled guilty to carjacking, in violation of N.J.S.A. 2C:15-2(a)(2), a first-degree offense. The court sentenced defendant in accordance with his plea agreement to a twenty-year term of incarceration, with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appeals from the amended judgment of conviction (JOC) dated April 10, 2018. We affirm.

I.

In the evening of December 15, 2013, defendant, Kevin Roberts, Hanif Thompson, and Basim Henry traveled in Henry's GMC Suburban to The Mall at Short Hills in Millburn to steal a car. When the group arrived at the mall, they drove into the parking deck and came across a 2012 grey Range Rover. Thompson and Roberts exited the GMC Suburban and approached Dustin Friedland as he walked around the Range Rover. Roberts pushed Friedman and a struggle ensued. Thompson hit Friedland in the head with a handgun and then shot him in the head. Thompson and Roberts forced Friedman's wife to get out of the Range Rover. They took the Range Rover and exited the parking deck.

2

Defendant and Henry fled the scene in the GMC Suburban. The Millburn police responded to the scene. Friedland was taken to Morristown Memorial Hospital, where he was pronounced dead.

Thompson, Roberts, Henry, and defendant drove to Newark. At around 10:00 p.m., Henry dropped defendant off at his mother's house on Osborne Terrace. Defendant called his brother and told him what had taken place at the mall. Thereafter, defendant's brother contacted the Newark police and reported what he knew of the carjacking and murder, apparently out of concern for defendant's safety.

On December 19, 2013, defendant met with detectives at the Essex County Prosecutor's Office (ECPO). He was informed of his Miranda[1] rights and agreed to be interviewed. The interview was recorded. Defendant provided a detailed account of the carjacking and admitted he was involved. He told the detectives he was staying at his mother's house, and that the clothes he was wearing during the carjacking, including a burgundy vest, were at that location.

Defendant voluntarily turned his phone over to the detectives, and a search of the phone revealed text messages from Thompson's phone. The text messages

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

stated that defendant should not give anyone the phone number, and that he should "stop running" his "mouth."

On December 20, 2013, Detective Miranda Mathis of the ECPO applied to the court for a warrant to search three locations, one of which was defendant's residence on Osborne Terrace in Newark. In the affidavit submitted in support of the application, Mathis stated that detectives at the ECPO had interviewed defendant, and defendant had provided a detailed account of the carjacking and murder at The Mall at Short Hills. Mathis noted that defendant admitted that he, Thompson, Roberts, and Henry were involved in the commission of the offenses.

Mathis stated that based on his training and experience, there was probable cause to believe carjacking, murder, felony murder, and weapons offenses had been committed, and that evidence relating to those crimes could be found at three locations, including defendant's residence on Osborne Terrace in Newark, Thompson's residence in Irvington, and Henry's residence in South Orange. The judge granted the application and issued the warrant authorizing the search of the three locations.

On September 19, 2014, an Essex County grand jury returned Indictment No. 14-09-2285, charging defendant, Thompson, Roberts, and Henry with

second-degree conspiracy to commit carjacking, N.J.S.A. 2C:5-2 and 2C:15-2(a) (count one); first-degree carjacking by purposely or knowingly putting the occupants in fear of immediate bodily injury, N.J.S.A. 2C:15-2(a)(2) (count two); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count three); first-degree purposeful and/or knowing murder, N.J.S.A. 2C:11-3(a)(1) (count four); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count five); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count six). Defendant was separately charged in Indictment No. 14-09-2286 with second-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(b).

Thereafter, defendant filed a motion to suppress the evidence found during the execution of the search warrant at the Osborne Terrace residence. Defendant argued that Mathis's affidavit failed to state facts explaining how the ECPO connected him to the address of the residence on Osborne Terrace. He therefore argued that the affidavit failed to establish probable cause for the search. The judge denied the motion for reasons stated in a written opinion dated December 1, 2015.

On October 10, 2017, defendant pled guilty to second-degree carjacking under N.J.S.A. 2C:15-2(a)(2). The State agreed to dismiss the other charges in

Indictment No. 14-09-2285 and Indictment No. 14-09-2286 and recommend a custodial sentence not to exceed twenty years.

Thereafter, the judge sentenced defendant in accordance with the plea agreement and imposed a twenty-year term of incarceration, with an eighty-five percent period of parole ineligibility pursuant to NERA. The judge filed a JOC dated January 18, 2018. With the consent of the parties, the judge filed an amended JOC dated April 10, 2018, which awarded defendant additional jail credits. This appeal followed.

On appeal, defendant argues:

> POINT ONE
> WHERE THE SEARCH WARRANT AFFIDAVIT DID NOT STATE HOW THE RESIDENCE TO BE SEARCHED WAS CONNECTED TO DEFENDANT OR TO ANY CRIMINAL ACTIVITY, THE SEARCH WARRANT WAS IMPROVIDENTLY GRANTED.
>
> POINT TWO
> BY NOT BEING SENSITIVE TO THE DIFFERENT ROLES OF THE CO-DEFENDANTS IN THE COMMISSION OF THE CRIME, THE SENTENCING JUDGE FAILED TO IMPOSE A FAIR TERM OF IMPRISONMENT ON DEFENDANT WHERE [THE JUDGE] DID NOT CONSIDER THE REAL-TIME CONSEQUENCES.

II.

We first consider defendant's contention that the trial court erred by denying his motion to suppress. Defendant argues the search warrant affidavit

6

failed to include facts showing his connection to any criminal activity or the residence to be searched. He therefore argues the search was invalid.

The Constitution of the United States and the New Jersey Constitution protect persons from unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. The New Jersey courts "have announced a preference for law enforcement to secure warrants from detached judges prior to a search, and searches without a warrant are presumed unreasonable unless they fall within an exception to the warrant requirement." State v. Boone, 232 N.J. 417, 426 (2017) (citing State v. Bryant, 227 N.J. 60, 69-70 (2016)).

The search warrant application "must satisfy the issuing authority 'that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched.'" Ibid. (quoting State v. Jones, 179 N.J. 377, 388 (2004)). A search executed pursuant to a warrant is presumed to be valid and the defendant "challenging the issuance of th[e] warrant has the burden of proof to establish a lack of probable cause 'or that the search was otherwise unreasonable.'" Id. at 427 (quoting State v. Watts, 223 N.J. 503, 513-14 (2015)).

A reviewing court gives "substantial deference to the discretionary determination resulting in the issuance of the [search] warrant." Ibid. (quoting

A-5095-17T3

Jones, 179 N.J. at 388).   The court considers the "totality of the circumstances" and should find the search valid "only if the finding of probable cause relies on adequate facts."  Ibid. (citing Jones, 179 N.J. at 388-89).

"[T]he probable cause determination must be . . . based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously."   Ibid. (quoting State v. Marshall, 199 N.J. 602, 611 (2009)).   Probable cause exists when, considering the totality of the circumstances, a person of "reasonable caution" would be justified in believing that evidence of a crime exists in a certain location.  Schneider v. Simonini, 163 N.J. 336, 361 (2000).

"Probable cause is "a common sense, practical standard for determining the validity of a search warrant." State v. Sullivan, 169 N.J. 204, 211 (2001) (quoting State v. Novembrino, 105 N.J. 95, 120 (1987)).  When making that determination, a court must consider "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ibid. (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)).

As stated previously, Detective Mathis submitted an affidavit in support of the application for issuance of the search warrant.  In the affidavit, Mathis

stated that on December 15, 2013, the Millburn police responded to The Mall at Short Hills after receiving a report of a carjacking with shots fired. The police found Friedland suffering from a gunshot wound to the head. His wife also was at the scene. Friedland was removed to a hospital, where he was pronounced dead.

Mathis detailed the investigation that followed. Mathis noted that the vehicle in which Friedland and his wife had travelled to the mall in was a 2012 grey Range Rover, which was recovered on December 16, 2013, on Renner Avenue in Newark. On December 16, 2013, a judge had issued a warrant for a search of that vehicle.

Mathis also stated that a review of surveillance footage captured a GMC Suburban leaving the mall parking deck at a high rate of speed, being followed by the carjacked Range Rover. Mathis said the vehicle was registered to a person residing on Charlton Avenue in South Orange. On December 17, 2013, the judge authorized the installation and monitoring of a mobile tracking device on the GMC Suburban.

Mathis stated that a witness, whose identity was known to law enforcement, had advised the ECPO that Henry was the primary operator of the GMC Suburban. She also noted that a Millburn police officer had reported that

on December 12, 2013, he observed a two-tone GMC Suburban traveling up and down the aisles of parked vehicles at the mall. The officer saw three black males in the vehicle.

Mathis also stated that the ECPO obtained information that Thompson was involved in the carjacking and murder and that there were numerous telephone contacts between Thompson's and Henry's phones. On December 18, 2013, and December 19, 2013, the judge granted applications for communications data warrants (CDWs) for Thompson's and Henry's phones and authorized the seizure of the GMC Suburban.

Mathis further stated that the ECPO had interviewed Ford. Mathis explained that defendant had come voluntarily to the ECPO because he felt threatened by text messages Thompson sent to him. Defendant turned over his cellphone to the ECPO. The detectives reviewed the messages on the phone, and on December 20, 2013, the judge granted an application for a CDW for defendant's phone.

Moreover, Mathis said that in the interview, defendant admitted he went to The Mall at Short Hills with Henry, Thompson, and Roberts on December 15, 2013. Defendant said they were able to steal the 2012 Range Rover during the

course of the carjacking. Defendant said the four men left the mall and drove to Renner Avenue in Newark in two vehicles.

Mathis asserted that based on her training and experience, she believed there was probable cause that the crimes of carjacking, murder, felony-murder, and additional weapons offenses, had been committed, and that evidence related to these crimes could be found at Henry's residence on Charlton Avenue in South Orange, defendant's residence on Osborne Terrace in Newark, and Thompson's residence on Myrtle Avenue in Irvington. The judge granted the application and issued the warrant.

On appeal, defendant argues that the affidavit was deficient because Mathis did not state how she had obtained defendant's "purported" address. Defendant contends the affidavit failed to connect him or any criminal activity to the specific residence on Osborne Terrace.

We are convinced, however, that Mathis set forth sufficient facts to connect defendant to the criminal activity at the mall and to the specific residence on Osborne Terrace in Newark. As we have explained, in the affidavit, Mathis noted that defendant had voluntarily appeared at the ECPO and admitted he was involved in the carjacking and murder that took place at the

11

mall on December 15, 2013. The affidavit stated that a specific residential unit on Osborne Terrace in Newark was defendant's residence.

The transcript of defendant's recorded interview indicates that defendant told the detectives that after the carjacking and murder, he was dropped off at his mother's house, which he described as his "home." Defendant also described the clothes he was wearing when the offenses were committed, which included a burgundy vest. He said the vest was at his mother's house.

Although Mathis did not state in his affidavit how the ECPO came to know that defendant was residing at his mother's house on Osborne Terrace, the conclusion is inescapable that the ECPO obtained that information from defendant himself, when he came to the ECPO and provided his recorded statement about the carjacking and murder.

Indeed, defendant never claimed he did not provide his address to the detectives at the ECPO when he appeared for the interview, nor did he claim that the residence on Osborne Terrace was not his home. Moreover, since defendant admitted he was involved in the offenses committed at the mall on December 15, 2013, the affidavit established a reasonable basis for the belief that evidence pertaining to those crimes could be found at defendant's residence.

A-5095-17T3

We therefore conclude there were sufficient facts within the four corners of the affidavit to establish probable cause for the issuance of the warrant.

We also conclude defendant did not assert a valid claim under Franks v. Delaware, 438 U.S. 154 (1978), based on the alleged omission of material facts from the warrant affidavit. To pursue such a claim, the defendant first must show the affiant made a false statement and that the statement was made knowingly or with reckless disregard for the truth. Id. at 171. "Allegations of negligence or innocent mistake" on the part of the affiant are insufficient. Ibid.

The Franks standard applies not only to false statements, but also to the omission of material facts from the warrant affidavit. State v. Marshall, 148 N.J. 89, 193 (1997) (citing State v. Stelzner, 257 N.J. Super. 219, 235 (App. Div. 1992)). As stated previously, we are not convinced that Mathis omitted material facts from the affidavit. However, assuming Mathis omitted material facts, defendant has not shown the omission was anything other than an innocent mistake.

Furthermore, defendant failed to make the required "substantial preliminary showing" that the detective "deliberately or with reckless disregard for the truth, failed to apprise the issuing judge of material information which, had it been included in the affidavit, would have militated against issuance of

13

the search warrant." State v. Sheehan, 217 N.J. Super. 20, 25 (App. Div. 1987). Clearly, if Mathis had included additional facts in the affidavit explaining how the ECPO learned of defendant's address, it would have provided further support for, rather than militate against, issuance of the warrant.

In support of his arguments regarding the warrant, defendant relies upon Boone. In that case, the police suspected that the defendant was distributing crack cocaine, heroin, and marijuana. Boone, 232 N.J. at 422. The police had observed the defendant drive to a parking lot in River Edge, retrieve a duffle bag from an unoccupied vehicle, and then drive to an apartment building on Johnson Avenue in Hackensack, where the police suspected he was living. Ibid.

An hour later, the defendant went to retrieve the bag from his car but noticed the vehicle from which the police were engaged in surveillance. Ibid. The defendant left the bag in the car and drove away. Ibid. The police noted that the defendant returned to the Johnson Avenue apartment building several times that day. Ibid. That evening, the police followed the defendant from the apartment building to another location in Hackensack, where they observed what they believed was a hand-to-hand drug transaction. Ibid. Thereafter, the defendant returned to the apartment complex on Johnson Avenue. Ibid.

A-5095-17T3

A detective from the Bergen County Prosecutor's Office applied for a warrant to search the defendant, his car, and a specific unit in the Johnson Avenue apartment building. Ibid. The building has thirty units, and in the affidavit, the detective did not provide any details about the unit to be searched or how the police knew the defendant was residing there. Ibid. The judge issued the warrant. Id. at 423.

The police executed the warrant and found between one-half and five ounces of cocaine and an illegal handgun in the apartment. Ibid. The defendant was charged with operating a facility for the manufacture of a controlled dangerous substance, in violation of N.J.S.A. 2C:35-4, and other offenses. Ibid.

The defendant challenged the warrant, arguing that the application was deficient because it stated that the specific unit in the Johnson Avenue apartment complex was the defendant's residence. Id. at 425. However, the application did not set forth facts showing that the defendant was residing there or establish a factual nexus linking the drug transaction to the residence. Ibid.

The Court held the judge erred by issuing the warrant because the application did not include sufficient facts to justify the issuance of the warrant. Id. at 431. The Court noted that the application did not include independent documentary evidence, such as a voting record, utility bill, or lease, to establish

the defendant's residence.  Id. at 429.  The Court also pointed out that no neighbor, informant, or controlled transaction showed the defendant was residing in the Johnson Avenue apartment.  Ibid.

The Court noted that the State had argued the police could have learned the defendant's address from past arrests, but the Court stated that the defendant's criminal record apparently included an address in Englewood.  Ibid.  The Court added that there was nothing in the affidavit which tied the specific apartment unit to the criminal activity.  Ibid.

We are convinced, however, that defendant's reliance on Boone is misplaced.  In the affidavit, Mathis stated that defendant had voluntarily come to the ECPO and admitted his involvement in the carjacking and shooting.  Based on that statement, the issuing judge could reasonably assume defendant had provided his address to the detectives at the ECPO, and that evidence pertaining to the carjacking and shooting would be found at that location.

## III.

Defendant also argues that his sentence is excessive.  He contends the sentencing judge failed to consider the real-time consequences of the sentence and did not impose a fair term of imprisonment.

"An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard."  State v. Jones, 232 N.J. 308, 318 (2018).  In reviewing a sentence, the court must determine whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record;' [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'"  State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

"An appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record."  State v. O'Donnell, 117 N.J. 210, 215 (1989) (citing State v. Jarbath, 114 N.J. 394, 400-01 (1989); Roth, 95 N.J. at 364-65).

Here, the sentencing judge found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense); six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record and the seriousness of the offenses for which he has been convicted); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law).  The judge found no mitigating factors.  As stated previously, the judge sentenced defendant in

17

accordance with the plea agreement and imposed a twenty-year term of incarceration, with an eighty-five percent period of parole ineligibility, pursuant to NERA.

On appeal, defendant argues the judge erred by finding aggravating factor nine. Here, the judge noted that defendant had expressed some remorse for his role in the commission of the offenses but gave the expression of remorse little weight because defendant still refused to take full responsibility for his crimes. The judge told defendant:

> [Y]ou seem to distance yourself from your own admitted criminality. In other words, it[ is] true. You did[ not] get out of the car and it may be that you did not intend Mr. Friedland to die, but by your own admission, you and your co-defendants and you in particular, . . . went on a mission that day and that mission was to steal a car.
>
> But that[ is] not all. Your mission was to use force against somebody to get that car. And you do[ not] seem to really take full responsibility even for your role in this. Yes, you may not have been the killer, . . . [b]ut for what you have done, you must pay.

The judge noted that defendant had twelve prior arrests, including arrests for simple assault, resisting arrest, and unlawful possession of a handgun. The judge also noted that defendant had seven prior indictable convictions, including convictions for eluding and resisting arrest. The judge pointed out that

18

defendant had the benefit of dismissals, downgrades, probation, and parole, but this had not deterred defendant from violating the law. The record supports the judge's findings and his conclusion that there was a need to deter defendant and others from violating the law.

Defendant further argues that the judge erred by failing to find mitigating factor twelve, N.J.S.A. 2C:44-1(b)(12) (willingness of defendant to cooperate with law enforcement authorities). He suggests he should not have received the same sentence as Roberts. We note that, at sentencing, defendant did not ask the judge to find mitigating factor twelve. It is clear, however, that the record does not support a finding of this factor.

The record shows that defendant and Roberts both pled guilty and were sentenced to agreed-upon twenty-year NERA sentences. Roberts's plea agreement called for his cooperation in the form of truthful testimony against his co-defendants, if required. That condition was not a part of defendant's plea agreement and, as noted, he did not take full responsibility for his role in the commission of the offense.

In addition, defendant contends the judge did not consider the real-time consequences of his sentence. Again, we disagree. At sentencing, the judge told defendant he had considered his earliest possible parole date, based on the

published parole-eligibility tables. The judge noted that defendant would become eligible for parole in seventeen years and recited the number of days defendant had already been incarcerated. Thus, the judge took into account the "real-time consequences of NERA and the role that [NERA] customarily plays in the fashioning of an appropriate sentence." State v. Marinez, 370 N.J. Super. 49, 58 (App. Div. 2004).

In support of his argument, defendant relies upon State v. Berardi, 369 N.J. Super. 445 (App. Div. 2004). There, the jury found the defendant guilty of first-degree carjacking under N.J.S.A. 2C:15-2, and other offenses, and the judge sentenced the defendant to a twenty-year term of incarceration, and a concurrent four-year term, subject to NERA. Id. at 447-48. We noted that a person convicted of carjacking may be sentenced to an ordinary custodial term of between ten and thirty years. Id. at 451; see also N.J.S.A. 2C:15-2(b).

In Berardi, we stated that the alternative elements of carjacking should guide the trial court's sentencing discretion and that "the high end of the sentencing range" should "be reserved for carjackings that involve the most serious accompanying elements." 369 N.J. Super. at 451 (quoting State v. Zadoyan, 290 N.J. Super. 280, 291-92 (App. Div. 1996)). Under the carjacking statute, there are four categories of carjacking, and the most serious additional

fact is "the infliction of bodily injury or the use of force." Zadoyan, 290 N.J. Super. at 291.

The defendant in Berardi was found guilty of "a category of carjacking that is next to the 'least serious carjacking' as articulated in Zadoyan." Berardi, 369 N.J. Super. at 453. The defendant had an argument with his girlfriend's father, in which "the latter was injured." Id. at 447. He fled and obtained a ride from a limousine service. Ibid. He put the limousine driver in fear of injury, the driver fled from the car, and defendant drove off with the car. Ibid.

We vacated the twenty-year sentence for carjacking and remanded the matter for resentencing so that the defendant and the State could "argue for an appropriate sentence" based on the category of carjacking "that is quite close to the lowest in sentencing severity." Id. at 454. It is abundantly clear, however, that Berardi has no application to this case.

Here, defendant pled guilty to carjacking under N.J.S.A. 2C:15-2(a)(2). The statute provides in pertinent part that a person is guilty of the offense if, "in the course of committing an unlawful taking of a motor vehicle," the person "threatens an occupant or person in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediate bodily injury . . . ." N.J.S.A. 2C:15-2(a).

Thus, defendant was not convicted of a category of carjacking that is "quite close to the lowest in sentencing severity." Berardi, 369 N.J. Super. at 454. Defendant's sentence was commensurate with the serious nature of this carjacking, in which Friedland was not merely put in fear of immediate bodily injury but was murdered. Defendant's contention that he should be sentenced to the lower end of the sentencing range for the carjacking offense is patently without merit.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5095-17T3